COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-266-CV

 

 

JANE DOE,
INDIVIDUALLY AND                                             APPELLANT

AS NEXT FRIEND FOR SALLY
DOE, 

A
MINOR                                                                                            

 

                                                   V.

 

TEXAS
ASSOCIATION OF 

SCHOOL BOARDS, INC. AND 

TEXAS ASSOCIATION OF SCHOOL 

BOARDS RISK MANAGEMENT FUND                                       APPELLEES

 

                                              ------------

 

            FROM THE 158TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction








In one issue, appellant Jane Doe, individually
and as next friend for her daughter Sally Doe, a minor, appeals the trial court=s order
granting the summary judgment motions of appellees Texas Association of School
Boards, Inc. (TASB, Inc.) and Texas Association of School Boards Risk
Management Fund (TASB RMF).  We affirm. 

Background Facts

Appellant alleges the following facts.  While John Paul Emenhiser was employed with
the Denton Independent School District (DISD) as a bus driver, he befriended
and took pictures of young girls assigned to his route, including Sally Doe.[1]  In 2000, while Sally was nine years old,
Emenhiser sexually assaulted her.  In
2001, using information and authority he had gained through his position as
Sally=s bus
driver,[2]
Emenhiser again sexually assaulted her while she was alone in her home.








In December 2003, appellant filed suit against
Emenhiser, seeking compensatory and exemplary damages for Emenhiser=s
assaults against Sally. 
Later, appellant amended her suit to add DISD as a defendant.[3]  On February 14, 2007, after appellant settled
her claims against DISD, the trial court severed those claims from her
remaining claims against Emenhiser.  On
June 28, 2007, appellant filed her third amended petition, which maintained her
claims against Emenhiser and joined appellees[4]
(who provided liability coverage for DISD) as defendants.  The suit against appellees sought a
declaration[5]
that Emenhiser is an insured under the coverage appellees provided to DISD in a
Sexual Misconduct Claims Endorsement to an interlocal participation agreement;
therefore, appellees are obligated to defend him and satisfy any judgment
obtained against him.  In July 2007,
appellees filed their answer to appellant=s
claims.  In November 2007, appellees
filed a traditional motion for summary judgment against appellant.  








The evidence attached to appellees= motion
established that DISD entered into an interlocal participation agreement with
appellees so that appellees would provide coverage and a defense for several
types of DISD=s property or casualty
risks.  In connection with the agreement,
appellees issued a Sexual Misconduct Claims Endorsement that outlined
particular situations in which coverage would apply (up to a $5,000,000 limit)
when DISD or its employees were accused of sexual misconduct with a
student.  The relevant parts of the
Sexual Misconduct Claims Endorsement state that coverage applied to

1.     Claims made by or on behalf of students or by employees against
a Program Participant [DISD] or any . . . employee . . . of such Program
Participant . . . arising out of allegations of sexual misconduct,
harassment, molestation or abuse; and exclusions relative to sexual misconduct
do not apply.  All Exclusions that would
otherwise apply remain applicable.

 

This coverage shall not
apply when a Program Participant or any 
. . . employee . . . has allegedly engaged in any acts . . . that
violate any criminal law where such alleged criminal acts . . . have resulted
in the filing or obtaining of a criminal charge and information or indictment
against any Program Participant or any 
. . . employee . . . of such Program Participant.  

 

. . . .

 

2.     Claims made by or on behalf of students . . . against a Program
Participant or any . . . employee . . . arising out of allegations that a Program
Participant . . . negligently employed, trained, investigated, reported,
supervised or retained a person engaged in sexual misconduct, harassment,
molestation, or abuse.  Exclusions
relative to sexual misconduct do not apply. 
All Exclusions that would otherwise apply remain applicable.

 








3.     Claims based on any allegation that a Program Participant or
any . . . employee . . . engaged in a practice, custom, or policy that
constitutes a violation of a civil right that caused or contributed to a claim
of sexual misconduct.  Exclusions
relative to sexual misconduct do not apply. 
All Exclusions that would otherwise apply remain applicable.

 

Based on the language of the endorsement,
appellees= motion contended that they had
no obligation to defend Emenhiser because he engaged in criminal acts for which
the policy excluded coverage.[6]  The motion also contended that appellees were
entitled to contractual indemnity from appellant based on language contained in
the settlement agreement between appellant and DISD.[7]
The settlement agreement (titled as a ACompromise
Settlement Agreement, Release of All Claims and Indemnity Agreement@) stated
that 

$                  
the Aincidents made the basis@ of the lawsuit were
Emenhiser=s assaults of Sally;

 

$                  
the AReleasing Parties@ comprised appellant
(individually and as Sally=s next friend);

 

$                  
the AReleased Parties@ were DISD and its Aemployees and
representatives, except that [Emenhiser was] specifically excluded@;

 








$                  
appellant discharged the Released Parties from all present or future
claims related to all injuries Adirectly or indirectly attributable to the
incident made the basis@ of the lawsuit, Awhether asserted in the
lawsuit or not@;

 

$                  
the release applied to all Afirms, corporations, [or] entities with whom
[DISD has] been, [is] now, or may hereafter be affiliated@;

 

$                  
in exchange for the release and settlement of Adisputed claims,@ appellees agreed to pay
appellant and Sally a substantial sum of money over many years.

 








The settlement agreement also contained a section titled AINDEMNIFICATION.@[8]       On
the day they filed their summary judgment motion against appellant, appellees
amended their answer to assert (1) the defenses included in their motion, (2) a
counterclaim for a declaratory judgment (along with attorney=s fees
and costs) against appellant based on the indemnification language in the
settlement agreement, and (3) a cross-claim against Emenhiser for a declaration
that he was not insured under the interlocal participation agreement between
appellees and DISD.  Appellant filed a
response to appellees= summary judgment motion,
arguing that the claims against Emenhiser were covered under paragraphs two and
three of the Sexual Misconduct Claims Endorsement and that the indemnification
clause of the settlement agreement with DISD was ambiguous, did not apply to
personal injury claims because such claims were not specifically delineated,
and could not apply to Sally because appellant had no authority to enter into
such a settlement agreement on Sally=s
behalf. 

After appellees filed a reply to appellant=s
summary judgment response,  the trial
court granted appellees= motion.[9]  Appellees then filed a motion for summary
judgment as to their cross-claim against Emenhiser (who had filed a pro se
answer to that claim);[10]
the trial court granted this motion as well, and it ordered that the coverage
document issued by TASB RMF to DISD Adoes not
provide any coverage for the claims asserted against [Emenhiser] by
[appellant].@ 
In May 2008, appellant obtained a judgment against Emenhiser for
$5,000,000.  Appellant then filed notice
of her appeal of the trial court=s
decision to grant both of appellees= summary
judgment motions.








The Propriety of the Summary Judgment

In her sole issue, appellant contends that the
trial court improperly granted appellees= motions
for summary judgment.  She argues that
the Sexual Misconduct Claims Endorsement requires appellees to provide coverage
for Emenhiser and that her claims against appellees are not excluded by the
indemnity provisions of the settlement agreement.

Standard
of review

In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215
(Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979).  The burden of proof is
on the movant, and all doubts about the existence of a genuine issue of
material fact are resolved against the movant. 
See Sw. Elec. Power Co., 73 S.W.3d at 215.








Summary judgment evidence that favors the movant=s
position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  However, we must consider whether reasonable
and fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City of Keller
v. Wilson, 168 S.W.3d 802, 822B24 (Tex.
2005).  Summary judgment is proper when
parties do not dispute the relevant facts. 
Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex. 2000).

The criteria of contract interpretation

The parties do not dispute evidentiary facts
related to the Sexual Misconduct Claims Endorsement or the settlement
agreement; rather, they differ in their interpretation of these documents.  Insurance policies and settlement agreements
are both contracts, and such documents are governed by the same rules of
construction applicable to all contracts. 
See Gray v. Nash,  259
S.W.3d 286, 289 (Tex. App.CFort
Worth 2008, pet. denied); Safeco Ins. Co. of Am. v. Gaubert, 829 S.W.2d
274, 281 (Tex. App.CDallas 1992, writ denied); see
also Webb v. Lawson‑Avila Constr., Inc., 911 S.W.2d 457, 461 (Tex.
App.CSan Antonio
1995, writ dism=d) (noting, however, that
indemnity agreements are strictly construed in favor of the indemnitor).








When construing a written contract, our primary
concern is to ascertain the true intent of the parties as expressed in the
instrument.  NP Anderson Cotton Exch.,
L.P. v. Potter, 230 S.W.3d 457, 463 (Tex. App.CFort
Worth 2007, no pet.); see Republic Nat=l Bank
of Dallas v. Nat=l Bankers Life Ins. Co., 427
S.W.2d 76, 79B80 (Tex. Civ. App.CDallas
1968, writ ref=d n.r.e.) (noting that courts
should not consider the Aintention which the parties may
have had, but failed to express in the instrument@).  In doing so, we must examine and consider the
entire contract in an effort to harmonize and give effect to all provisions so
that none are rendered meaningless.  Potter,
230 S.W.3d at 463; see J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223,
229 (Tex. 2003).  Contractual provisions
should be considered with reference to the entire instrument; no single
provision should control.  Webster,
128 S.W.3d at 229; Potter, 230 S.W.3d at 463.  Words in a contract must carry their
ordinary, generally accepted meaning unless the contract itself shows that the
terms have been used in a technical or different sense.  See Ramsay v. Md. Am. Gen. Ins. Co., 533
S.W.2d 344, 346 (Tex. 1976).  In
construing a contract, we may not rewrite it nor add to its language.  Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 162 (Tex. 2003).  Also,
we must weigh that parties to a contract

are considered masters of their own choices.  They are entitled to select what terms and
provisions to include in a contract before executing it.  And, in so choosing, each is entitled to rely
upon the words selected to demarcate their respective obligations and rights.
In short, the parties strike the deal they choose to strike and, thus,
voluntarily bind themselves in the manner they choose.

Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26 (Tex.
App.CAmarillo
2000, no pet.).








A contract is unambiguous if it can be given a
definite legal meaning; if it is subject to two or more reasonable
interpretations, it is ambiguous, creating a fact issue on the parties=
intent.  Webster, 128 S.W.3d at
229; Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861
(Tex. 2000).  However, lack of
clarity does not necessarily create an ambiguity, and neither does a mere
disagreement between the parties.  See
Universal Health Servs., Inc. v. Renaissance Women=s Group,
P.A., 121 S.W.3d 742, 746 (Tex. 2003) (adding that whether Aa contract
is ambiguous is a question of law that must be decided by examining the
contract as a whole in light of the circumstances present when the contract was
entered@); see
also City of The Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 722
(Tex. App.CFort Worth 2008, no pet. h.)
(explaining that when Athe meaning of a contract is
unambiguous, a party=s construction is immaterial@).  When a contract contains an ambiguity, the
granting of a motion for summary judgment is improper because the
interpretation of the instrument becomes a fact issue.  Coker v. Coker, 650 S.W.2d 391, 394 (Tex.
1983).  Conversely, the interpretation of
an unambiguous contract is a matter of law to be determined by the trial court.
 Gulf Ins. Co. v. Burns Motors, Inc.,
22 S.W.3d 417, 423 (Tex. 2000).








Analysis

We must strictly construe the parties=
settlement agreement in favor of appellant using the normal rules of contract
interpretation detailed above.  See id.;
Webb, 911 S.W.2d at 461.  The
settlement agreement in dispute stated, in pertinent part,

        3.01  It
is expressly understood and agreed that the Releasing Parties have paid . . .
all expenses . . . of any kid [sic] or character, past, present and future,
alleged to be incurred as a result of the 
. . . incidents made the basis of this lawsuit . . . and the Releasing
Parties hereby agree to indemnify, defend, and hold harmless the Released
Parties and TASB RMF from any and all claims or causes of action for the
recovery of any expenses . . . .  Such indemnification shall include, but is
not limited to, claims arising from . . . any partial or sole intentional or
negligent act or omission of any or all of the Released Parties and TASB RMF,
and further includes the costs of defending against such claims . . . .  Such right of indemnity . . . shall exist
in favor of the Released Parties and TASB RMF . . . . 

 

3.02  For the consideration set forth above, the
Releasing Parties hereby agree to fully indemnify, defend and hold harmless
each of the Released Parties and TASB RMF from any and all claims . . .
and causes of action of whatsoever nature or character, at law or in equity,
past, present, or future, which may have been or which may hereafter be asserted
by any person, firm, corporation, or other entity whomsoever claiming by,
through, or on behalf of the Releasing Parties, arising from the incident
made the basis of this lawsuit.  Such
indemnification shall include but is not limited to, claims arising from, or
amounts recovered based on claims arising out of any . . . negligent act or
omission of any or all of the Released Parties and TASB RMF . . . .
[Emphasis added.]

 








Appellant contends that though TASB RMF is
specifically designated as a party to enjoy indemnity, this language does not
require her (or Sally) to indemnify and hold harmless TASB RMF as to the claims
she asserted against Emenhiser because (1) appellees are not among the AReleased
Parties@ in the
settlement agreement and therefore they do not have standing to enforce it;
(2) the language is ambiguous in that it refers to the Aincident@ made
the basis of her lawsuit, while her lawsuit described more than one assault and
legal theories other than assault; (3) the language specifically excludes the
claims against Emenhiser from those released, and it does not apply to Sally=s direct
claims; (4) the language does not encompass personal injury claims; and
(5) Jane Doe does not have authority to enter any settlement or
indemnification agreement that would bind Sally.

Appellees have standing to enforce the indemnity
provision








In her reply brief, appellant contends that
because TASB RMF was not a signing party to the settlement agreement, it has no
standing to enforce the indemnity provision contained in it.  A third party may recover on a contract made
between other parties if the parties intended to secure a benefit to that third
party and the parties entered into the contract directly for the third party=s
benefit.  Stine v. Stewart, 80
S.W.3d 586, 589 (Tex. 2002); see S. Tex. Water Auth. v. Lomas, 223
S.W.3d 304, 306 (Tex. 2007); Haire v. Nathan Watson Co., 221 S.W.3d 293,
301 (Tex. App.CFort Worth 2007, no pet.).  To qualify as an intended third‑party
beneficiary, a party may show that it is a @creditor@
beneficiary of the contract.  Stine,
80 S.W.3d at 589.  An agreement benefits
a Acreditor@
beneficiary if, under the agreement, performance will come to him in
satisfaction of a legal duty (such as a contractual obligation or other legally
enforceable commitment).  Id.  A third‑party beneficiary does not have
to show that the signatories executed the contract solely to benefit it as a
noncontracting party.  Id. at 591.








We conclude that the settlement agreement signals
the signatories= intention to confer a benefit
on TASB RMF as a creditor beneficiary because it (1) specifically states that
TASB RMF shall be indemnified along with the Released Parties, (2) indicates
(as recited in section 3.02 of the agreement) that such a designation was
conferred because TASB RMF provided consideration by paying substantial sums to
appellant (as acknowledged received by appellant in section 1.04), and (3)
particularly mentions TASB RMF in several other parts of the agreement and
obligates TASB RMF to abide by several of the agreement=s terms,
including payments already made and to be made in the future.  See Stine, 80 S.W.3d at 589B91; see
also Marine Creek Partners, Ltd. v. Caldwell, 926 S.W.2d 793, 795 (Tex.
App.CFort
Worth 1996, no writ) (explaining that status as a third-party beneficiary may
be created when the Aobligation to the third party is
clearly and fully spelled out@).  Because we conclude that the settlement
agreement conferred standing on TASB RMF as a third-party beneficiary to the
agreement, we hold that TASB RMF=s
exclusion as a signatory[11]
to the agreement is inconsequential.  See
City of Alton v. Sharyland Water Supply Corp., 145 S.W.3d 673, 682 (Tex.
App.CCorpus
Christi 2004, no pet.) (explaining that A[t]hird‑party
beneficiaries to a contract acquire the same rights and standing to enforce the
contract as those held by one of the contracting parties@).  Thus, summary judgment was not precluded on
this ground.

The settlement agreement is not ambiguous








Next, we cannot agree with appellant that the
indemnity provisions in the settlement agreement are ambiguous because
paragraph 3.02 referred to the Aincident
made the basis of this lawsuit@ while
her pleading on file at the time of the agreement alleged multiple assaults and
various legal theories.  The recitals
portion of the settlement agreement (paragraph A) dictates that the Aincidents
made the basis of this lawsuit@ are the
Aassaults
of [Sally Doe], a minor.@ 
Apart from pluralizing Aincident,@ this
exact language is used to describe the indemnified claims in section 3.02.








We conclude and hold that the agreement is not
ambiguous.  The striking similarity is
sufficient to show the parties= intent
as expressed in the instrument to include in section 3.02 all claims from any of
Emenhiser=s assaults against Sally, rather
than one assault or the other and rather than some claims but not others.[12]
Thus, we conclude that the singular term Aincident@ was
nothing more than a typographical error. 
See Batjet, Inc. v. Jackson, 161 S.W.3d 242, 247 (Tex. App.CTexarkana
2005, no pet.) (holding that the use of the word Aclient@ instead
of Aclients@ in a
rule 11 agreement letter was not dispositive of the intention that multiple defendants
be bound to a settlement agreement); City of Galveston v. Galveston Mun.
Police Ass=n, 57
S.W.3d 532, 539 (Tex. App.CHouston
[14th Dist.] 2001, pet. denied) (noting that typographical mistakes must Ayield to
the well‑established doctrine that written contracts will be construed
according to the intention of the parties, notwithstanding errors and
omissions, by perusing the entire document@).

Our conclusion is strengthened by the fact that
section 1.01 of the settlement agreement (under a portion of the agreement
titled ARELEASE
AND DISCHARGE@) also refers to the singular Aincident
made the basis of this lawsuit@ when
describing the claims released in favor of DISD.  If we were to hold that Aincident@ made
section 3.01 ambiguous, we would also have to conclude that the same term is
ambiguous in section 1.01.  We cannot do
so because we cannot conclude that reasonable minds would disagree as to
whether, in a document partly titled ARELEASE
OF ALL CLAIMS,@ the parties intended to
discharge DISD from claims arising from both of the sexual assaults or only one
of the two.  See Webster, 128
S.W.3d at 229.

For these reasons, we reject appellant=s
argument that the settlement agreement is ambiguous because it refers to the Aincident@ rather
than the Aincidents@ made
the basis of her lawsuit.  Thus, summary
judgment was not prohibited on this ground.








While
the settlement agreement excludes Emenhiser from those released, it includes
appellees as those indemnified; also, it applies to Sally=s direct claims, if any 

 

Appellant next contends that because the
settlement agreement excluded Emenhiser as a released party in three of its
provisions,[13]
appellant could not have intended to indemnify appellees for the claims against
him.  Specifically, appellant contends
that there 

would be no reason to
exclude Mr. Emenhiser from the release in three separate provisions if the
parties intended to bar [Sally=s] claims against Emenhiser because her mother
agreed to indemnify the school district and TASB RMF for them.  There would be no reason to indemnify TASB
RMF for [a]ppellant=s claims against Mr.
Emenhiser but not release TASB RMF.

 








However, Emenhiser=s exclusion
in those three provisions is not made surplusage by the indemnity language, as
appellant implies, because though the language grants appellees indemnity for
such claims, it does not bar the claims that appellant continued to pursue
against Emenhiser himself.  In other
words, the settlement agreement allowed appellant to obtain her $5,000,000
judgment against Emenhiser, but the indemnity provision precluded appellees=
responsibility to pay that third-party judgment.  We do not believe that section 3.02 (as set
forth above) could reasonably be interpreted differently, because it granted
TASB RMF indemnity for all claims brought by or through appellant that arose
out of Emenhiser=s assaults.  See Webster, 128 S.W.3d at 229.  Further, TASB RMF=s
inclusion as an indemnified party but not a Released Party makes sense because
at the time the parties signed the settlement agreement, TASB RMF had not yet
been sued by appellant; appellant waited to sue TASB RMF until after she signed
the settlement agreement and received money from TASB RMF.

Appellant also contends that the indemnity
language in the settlement agreement cannot be interpreted to apply to claims
in which ASally Doe, a minor, had a direct
(not derivative) claim@ against Emenhiser.  However, the language contains no limitation
regarding either the direct or derivative nature of Sally=s
claims; rather, it applies to all claims brought by, through, or on
behalf of appellant individually or as Sally=s next
friend.

For these reasons, we cannot agree with appellant
that the trial court=s summary judgment was improper
on these bases.

The
indemnity agreement encompasses the assault claims against Emenhiser

 








Appellant also asserts that the indemnity
language in favor of TASB RMF does not cover the claims against Emenhiser
because the language fails to expressly mention personal injuries.  In support of this contention, appellant
relies on Ard v. Gemini Exploration Co., 894 S.W.2d 11, 15 (Tex. App.CHouston
[14th Dist.] 1994, writ denied).  In Ard,
the court examined indemnity language which stated in part,

Indemnity. Contractor [RRS] agrees
to indemnify and hold the Company [Resolve], including its affiliates,
directors, officers, shareholders, employees, successors and assigns
(collectively, the ACompany Indemnified
Parties@), harmless from all
suits, actions, demands, damages, costs, expenses, or claims or any character,
type or description, including the expenses of litigation, court costs, and
reasonable attorney fees brought or made for or on account of the
employment relationship between contractor and its employees, including,
without limitation, all suits, actions, claims, demands, damages, costs, or
expenses brought by contractor=s employees under the applicable workers= compensation statute and
other claims by its personnel for violation of civil rights, hiring practices
and other employment laws.

 

Id. at 14 (emphasis added).  The court held that the Afailure
to specifically list personal injury as a covered claim preclude[d] indemnity
for the personal injury claim.@  Id. at 15.








However, the indemnity provision in this case is
distinguishable from the one in Ard. 
In Ard, the provision limited itself to claims based on
employment matters (as emphasized above). 
Section 3.02 of the settlement agreement contains no such limitation;
rather, the indemnity provisions extend to Acauses
of action of whatsoever nature or character.@  Moreover, section 2.02 of the settlement
agreement states that the required payments of TASB RMF to appellant Aconstitute
damages on account of personal physical injuries.@  

Further, by qualifying its relation to the Aincident
made the basis of this lawsuit,@ a
phrase (apart from singular tense) defined in the terms of the settlement
agreement to specifically mean the Aassaults
of [Sally],@ section 3.02 directly connects
to the sole legal theoryCassaultCto which
appellant obtained her judgment against Emenhiser.  Because of this, we conclude that whether
section 3.02 more broadly provides indemnification for personal injuries other
than those related to assault is irrelevant.

Therefore, the trial court also did not err by
granting summary judgment on this ground.

Appellant had authority
to bind Sally to the indemnification agreement

 








Finally, appellant asserts that even if she was
bound to the indemnity provisions to the extent that appellees have asserted,
Sally cannot be bound to the indemnity provisions because as a minor, Sally is
legally disabled and was incompetent to enter the agreement.  For this proposition, appellant cites rule  of civil procedure 44 and Vandewater v.
American General Fire & Casualty Co., 890 S.W.2d 811, 814 (Tex. App.CAustin
1994), rev=d, 907
S.W.2d 491 (Tex. 1995). 
In reviewing the Austin Court of Appeals=
decision in Vandewater, the Texas Supreme Court considered Awhether
a trial court could properly acquire jurisdiction over a minor defendant and
render a final judgment binding the minor=s
interests when the minor=s mother answered as the minor=s next
friend.@  Vandewater, 907 S.W.2d at 491.  The supreme court noted that the Austin court
had focused on the plaintiff=s
failure Ato
personally serve [the minor] with process@ and
that the Austin court had therefore concluded that the Atrial
court never acquired personal jurisdiction@ over
him.  Id. at 492.  Rather than approving of such a narrow focus,
the supreme court determined that an 
appellate court 

should evaluate whether
the minor=s interests have been
properly protected and whether a deficiency in notice or due process has been
shown to determine whether a trial court has obtained personal jurisdiction
over a minor.  In this case, the answer
of [the mother] in her capacity as [the minor=s] next friend was
sufficient indication that [the minor=s] legal representative knew about the
proceedings and could therefore defend against them.  No deficiencies in notice or due process
are raised by the record on these facts.

 








Id. at 492B93
(citations omitted); see Lehmann v. Har‑Con Corp., 76 S.W.3d 555,
565 (Tex. App.CHouston [14th Dist.] 2002, no
pet.) (noting that a Aparent has the right to
represent the child in legal action and to make other decisions of substantial
legal significance concerning the child@ and
that Aa parent
prosecuting in the dual capacity of next friend of a minor and as a plaintiff
in her own right may settle a case, provided her interest is not preferred to
the detriment of the minor@); see
also Tex. R. Civ. P. 44 (stating that minors may Asue and
be represented by >next friend=@ and
that the next friend may  with Athe
approval of the court compromise suits and agree to judgments@).

Like in Vandewater, we conclude that Sally=s
interests in entering the settlement agreement=s
indemnity provision and in defending against appellees=
declaratory judgment counterclaim were properly protected because (1) Jane
initiated the original suit against appellees on behalf of Sally, bringing
Sally within the trial court=s
jurisdiction, (2) Jane signed the settlement agreement as Sally=s next
friend and filed responses to appellees=
counterclaim and their motion for summary judgment[14]
in that same capacity, (3) Sally=s
guardian ad litem also signed the settlement agreement on her behalf, and (4)
appellant notified the trial court of the settlement, which the trial court
specifically approved.[15]








Further, we note that appellant=s
position as to this issue is inconsistent with the benefit she obtained from
the settlement agreement.  In essence,
she contends that she had the authority to assert and settle claims on behalf
of Sally and her while recovering large amounts of money by doing so, but that
she did not have the authority to provide the consideration required to secure
that benefit.  Quasi‑estoppel
precludes a party from asserting, to another=s
disadvantage, a right inconsistent with a position previously taken; it Aforbids
a party from accepting the benefits of a transaction . . . and then
subsequently taking an inconsistent position to avoid corresponding obligations
or effects.@ 
Brooks v. Brooks, 257 S.W.3d 418, 423 (Tex. App.CFort
Worth 2008, pet. denied).  Based on
quasi-estoppel and the other authority cited above, we reject the assertion
that Sally is not bound to the settlement agreement=s
indemnity provisions.  Thus, summary
judgment on appellees= counterclaim was also not
precluded on this basis.

The
trial court properly granted summary judgment on appellees= indemnity counterclaim

 

For all of these reasons, we hold that appellees
established that no genuine issue of material fact exists and that they are
entitled to judgment as a matter of law against appellant based on the
indemnity provisions in the settlement agreement. Tex. R. Civ. P. 166a(c); see
Grant, 73 S.W.3d at 215.  We
therefore affirm the trial court=s order
granting appellees= summary judgment motion on that
ground.








Our
affirmance of the trial court=s summary judgment on the basis of appellees= indemnification
counterclaim is dispositive of this appeal 

 








Appellant=s
petition on file at the time the trial court granted appellees= motion
for summary judgment against her sought a declaration that Emenhiser was an
insured under appellees= coverage with DISD for the
purpose of establishing that appellees were Aobligated
to satisfy any judgment@ appellant obtained against
Emenhiser.  Because we hold that the
indemnity and hold harmless language in the settlement agreement between
appellant and DISD precludes appellees=
responsibility to pay any such judgment to appellant, we conclude that as to
her (and on Sally=s behalf), the issue of whether
Emenhiser is an insured under the interlocal participation agreement is
immaterial.[16]  In other words, though the indemnity
provision is not an affirmative defense nor an absolute bar to appellant=s claim
seeking a coverage determination, see Derr Construction Co. v. City of
Houston, 846 S.W.2d 854, 858 (Tex. App.CHouston
[14th Dist.] 1992, no writ), we hold that in this case, it renders the coverage
determination moot.  Therefore, we will
not consider whether the trial court properly granted appellees= summary
judgment motions on the coverage issue.  See
Tex. R. App. P. 47.1; Hawkins v. Walker, 233 S.W.3d 380, 395 n. 47
(Tex. App.CFort Worth 2007, no pet.).

Conclusion

Having overruled a dispositive portion of
appellant=s sole issue, we affirm the
trial court=s judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

 

PANEL:  LIVINGSTON and MCCOY, JJ.; and WILLIAM
BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  March 5, 2009

 











[1]Because of the sensitive
nature of this case, fictitious names will be used throughout this opinion to
protect the identities of the victimized parties.  See Patterson v. State, 46 S.W.3d
294, 298 n.1 (Tex. App.CFort Worth 2001, no
pet.).





[2]Specifically, appellant
alleged that because of Emenhiser=s employment with DISD, he had access to the
location of students= residences, their
parents= work schedules, and
their siblings= probable whereabouts.





[3]Appellant contended that
DISD entrusted Emenhiser with information and that DISD had knowledge of
Emenhiser=s Aunnatural interest in
both children and pornography.@





[4]TASB, Inc. is the program
administrator of TASB RMF.  While both
TASB, Inc. and TASB RMF are appellees in this appeal, the only issue presented
by appellant is whether the trial court erred by granting TASB RMF=s motions for summary
judgment.  In her brief and at oral
argument, appellant admitted that summary judgment was properly granted to
TASB, Inc. because it was not a party to the interlocal participation agreement
with DISD.  Because of this admission,
and because our review of the evidence confirms that TASB, Inc. was not a party
to the agreement, we will affirm the summary judgment entered in TASB, Inc.=s behalf.  For simplicity, however, in this opinion we
will refer to TASB, Inc. and TASB RMF collectively as Aappellees.@





[5]Appellant filed the suit
under the Uniform Declaratory Judgments Act. 
See Tex. Civ. Prac. & Rem. Code Ann. '' 37.001B.011 (Vernon 2008).





[6]The summary judgment
evidence established that a Denton County jury convicted Emenhiser of indecency
with a child, aggravated sexual assault, and sexual performance by a child; the
jury sentenced him to ninety-nine years= confinement on the aggravated sexual assault
charge.





[7]Other grounds for summary
judgment asserted by appellees to the trial court, related to appellant=s standing and an alleged
statutory prohibition of appellant=s suit, have been abandoned on appeal.





[8]The full contents of this
section are set forth below.





[9]Appellant contends that
appellees did not prevail on their indemnity counterclaim through summary
judgment because in its final judgment, the trial court denied appellees= claim for attorney=s fees.  However, the record reflects that the trial
court granted the motion for summary judgment that contained arguments
regarding appellees= indemnity
counterclaim.  And though the trial court
did not specify that it granted summary judgment on the indemnity basis, when a
trial court grants a general summary judgment, we must affirm the judgment if
any of the theories that the prevailing party advanced at trial are
meritorious.  See Morris v. JTM
Materials, Inc., 78 S.W.3d 28, 36 (Tex. App.CFort Worth 2002, no
pet.).





[10]Appellees attached the
same summary judgment evidence to this motion as to their previous summary
judgment motion.





[11]Though not a signatory,
TASB RMF is a named party to the agreement because it is specifically included
in the ARECITALS AND DEFINITIONS@ portion of the
agreement.  We note than an argument
could be made that TASB RMF was also a Released Party in the settlement
agreement because through paragraph 1.02, the release applied to all Afirms, corporations, and
entities with whom the Released Parties . . . are now . . . affiliated.@  However, we need not resolve this appeal on
that basis.





[12]In an attempt to limit
the breadth of section 3.02 so that it would not cover her assault claims against
Emenhiser, appellant contends in her brief that Areasonable minds could
determine that >the incident= referenced the civil
rights violations which stemmed from [DISD=s] failure to protect [a]ppellant from sexual
harassment.@  However, this assertion is belied by the
language contained earlier in section 3.02 indicating that indemnity applied to
Acauses of action of
whatsoever nature or character.@





[13]For instance, the
settlement agreement stated that in Aconsideration for the payments described herein,
the Releasing Parties hereby release . . . the Released Parties, SAVE AND
EXCEPT THOSE CLAIMS AGAINST JOHN PAUL EMENHISER, from any and all claims . . .
.@  Another provision specifically excluded
Emenhiser from the AReleased Parties.@





[14]Appellant has cited no
conflict between her and Sally in defending against appellees= summary judgment motion
that would have required the trial court to appoint a guardian ad litem for
that purpose.





[15]In approving the
settlement, the trial court recited that Sally=s guardian ad litem
thoroughly considered the settlement and that he opined that its terms were
fair and reasonable.  The trial court
found the settlement to be in Sally=s best interest; it therefore ordered that it be Abinding and conclusive in
all respects.@





[16]While it may remain
material to Emenhiser (who must satisfy a $5,000,000 judgment), he did not
appeal the trial court=s decision to grant
appellees= motion for summary
judgment on their declaratory judgment cross-claim against him, nor did he file
any response to the trial court regarding that motion.