

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-496-CV

VINEYARD VILLAGE, LTD. AND          APPELLANTS
VINEYARD VILLAGE, MSV, LLC

V.

UNIVEST PROPERTIES, INC.,          APPELLEES
TRUSTEE, AND YORKSHIRE
WEST REALTY ADVISORS, L.P.

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In three issues, Appellants Vineyard Village, Ltd. and Vineyard Village MSV, LLC ("Vineyard") complain that the trial court erred by granting summary judgment for Appellees Univest Properties, Inc. and Yorkshire West Realty

---

[1] *See* Tex. R. App. P. 47.4.

Advisors, L.P.,[2] by excluding Vineyard's summary judgment evidence, and by awarding attorneys' fees to Univest and Yorkshire. We affirm.

## II. Factual and Procedural Background

In 2005, Vineyard entered into a real estate purchase and exchange agreement (the "Agreement") with Univest to purchase property located on Highway 121 in Euless, Texas, for the development of a retail shopping center. Under the Agreement, Univest retained an undeveloped portion of the property near the highway's frontage road. Section 10.04 of the Agreement required the parties to prepare and execute a reciprocal easement and operating agreement (the "REA") to provide for the shopping center's layout, construction, and design guidelines.

In early 2006, Vineyard and Univest negotiated and executed the REA, which provided, in pertinent part, for the following:

> 3. Use Restrictions. The Shopping Center shall be used for retail and/or restaurant purposes . . . . The . . . Vineyard Properties and the Univest Property, respectively, shall be entitled to no more than two (2) financial institutions.

---

[2] Vineyard claims that Univest filed a site plan listing Yorkshire as the owner of the property at issue in this case, thereby making Yorkshire a party. We refer to Univest and Yorkshire collectively as "Univest" except where inappropriate.

2

4. <u>Layout [and Construction] of the Shopping Center</u>. The Shopping Center shall be constructed in substantially the manner set forth on the Site Plan; provided, however, each Party shall not unreasonably withhold consent for minor revisions to same so as to accommodate prospective tenants as it benefits the layout of the Shopping Center. This shall include the pad sites fronting on State Highway 121 which may be laid out differently so long as each pad site contains sufficient parking for it[s] use. Additionally, the Univest Property may either contain the four (4) separate pad sites substantially as shown on the Site Plan or contain three (3) pad sites so long as all three (3) buildings are separated by at least one hundred feet (100'). . . .

5. <u>Height Restrictions</u>. All buildings on the Univest Property as well as all . . . Vineyard Properties shall be limited to a height of twenty-four feet (24') inclusive of parapets and other architectural features. . . .

6. <u>Screening</u>. The Vineyard Owner shall install and plant vegetation screening . . . .

7. <u>Dumpster Enclosures</u>. All dumpsters shall be suitably enclosed so as to screen same from view. The enclosures shall use masonry walls with hinged doors to remain attached and functioning at all times. . . .

After the execution of the REA, Vineyard constructed its portion of the shopping center.

In 2008, Univest filed a site plan application with the Euless Planning and Zoning Commission. The application contained Univest's plans for three pad sites, instead of the four pad sites as shown in the original Site Plan attached

3

to the REA, with a 16,000 square foot retail building on one of the sites. After learning of the application, Vineyard sent Univest a letter in which Vineyard complained that Univest's planned structure constituted a "material change" and demanded that Univest cease its development and comply with the terms of the REA.

Shortly thereafter, Vineyard filed suit against Univest for breach of contract, seeking, among other things, injunctive relief to stop Univest's development. In its petition, Vineyard asserted that the terms of the REA required Univest to build four restaurant pad sites and that Univest's plan to create only three pad sites with a retail building of approximately 16,000 square feet on one of the pad sites was a "major revision" that required Vineyard's consent. Vineyard later supplemented its petition to assert that the REA contained ambiguous terms. After a hearing on the temporary injunction, the trial court denied Vineyard's request.

On April 21, 2008, Univest filed a traditional motion for partial summary judgment, claiming that as a matter of law its site plan did not violate the terms of the REA. Specifically, Univest argued that it was entitled to summary judgment because, under rules of contract construction, the REA allowed Univest to (1) create three pad sites instead of four, (2) use the pad sites for retail, and (3) build a 16,000 square foot building on one of the pad sites.

4

In response, Vineyard asserted that language in section four of the REA is ambiguous and therefore raises a genuine issue of material fact. Specifically, Vineyard claimed that the REA is silent as to (1) what constitutes a "major" or a "minor" revision for consent purposes, (2) when it would be "unreasonable" to withhold consent for a "minor" revision, and (3) under what circumstances consent could be withheld for a "major" revision. Vineyard's response included, among other things, an affidavit and the deposition testimony of Burk Collins, a Vineyard representative. Collins testified as to his interpretation of the terms alleged by Vineyard to be ambiguous.

Univest filed objections to Vineyard's summary judgment evidence, asserting that Vineyard sought to improperly use parol evidence in an attempt to create a fact issue. Further, Univest claimed that Collins's affidavit was vague, ambiguous, conclusory, and included statements by an interested party that were not readily controvertible.

After a hearing on Univest's partial motion for summary judgment, the trial court granted judgment in favor of Univest and sustained several of Univest's evidentiary objections. The trial court subsequently granted Univest's motion for attorneys' fees and then signed a final judgment, ruling that Univest's planned structure complied with the terms of the REA as a matter of

law and awarding to Univest and Yorkshire "necessary and reasonable" attorneys' fees and costs. This appeal followed.

### III. Partial Motion for Summary Judgment

In its first issue, Vineyard argues that the trial court erred by determining that Univest's planned structure complied with the terms of the REA as a matter of law because Vineyard's summary judgment evidence created material fact issues with regard to several essential terms in the REA.

### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's

position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

B.  Discussion

The principal dispute between the parties is whether the first sentence in section four of the REA (the "consent provision") is applicable to Univest's plans to create three pad sites and to build a 16,000 square foot retail structure on one of the pad sites.  Section four states, in pertinent part, the following:

> (4)  <u>Layout [and Construction] of the Shopping Center</u>. The Shopping Center shall be constructed in substantially the manner set forth on the Site Plan; provided, however, each Party shall not unreasonably *withhold consent* for *minor revisions* to same so as to accommodate prospective tenants as it benefits the layout of the Shopping Center.  This shall include the pad sites fronting on State Highway 121 which may be laid out differently so long as each pad site contains sufficient parking for it[s] use.  Additionally, the Univest Property may either contain the four (4) separate *pad sites* substantially as shown on the Site Plan or contain three (3) pad sites so long as all three (3) buildings are separated by at least one hundred feet (100'). . . . [Emphasis added.]

7

Vineyard argues that "several reasonable interpretations exist as to when, and how, a party may change the shopping center layout depicted in the Site Plan" and that the terms "minor revisions" and "unreasonably withhold consent" in section four of the REA are susceptible to more than one meaning. Vineyard claims that because there is more than one reasonable interpretation for these terms, fact issues exist as to whether Univest's planned structure is a "minor revision" and whether Vineyard "unreasonably withh[e]ld consent." Vineyard's arguments rest on its claim that Univest's planned structure is a revision regardless of whether it is a "minor revision" or a "major revision." Univest, on the other hand, argues that because its plans are in compliance with the REA—and therefore do not constitute a revision—Vineyard's consent is not required. Univest further asserts that Vineyard's interpretation of the consent provision is unreasonable because it renders express provisions in the REA meaningless. We agree with Univest.

When construing a written contract, our primary concern is to ascertain the true intent of the parties as expressed in the instrument. *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.); *see also Republic Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76, 79–80 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) (noting that courts should not consider the "intention which the parties may

8

have had, but failed to express in the instrument"). In doing so, we must examine and consider the entire contract in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *Potter*, 230 S.W.3d at 463; *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Contractual provisions should be considered with reference to the entire instrument; no single provision should control. *Webster*, 128 S.W.3d at 229; *Potter*, 230 S.W.3d at 463. Words in a contract must carry their ordinary, generally accepted meaning unless the contract itself shows that the terms have been used in a technical or different sense. *See Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex. 1976). In construing a contract, we may not rewrite it nor add to its language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). Also, we must weigh that parties to a contract

> are considered masters of their own choices. They are entitled to select what terms and provisions to include in a contract before executing it. And, in so choosing, each is entitled to rely upon the words selected to demarcate their respective obligations and rights. In short, the parties strike the deal they choose to strike and, thus, voluntarily bind themselves in the manner they choose.

*Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.).

A contract is unambiguous if it can be given a definite legal meaning; if it is subject to two or more reasonable interpretations, it is ambiguous, creating a fact issue on the parties' intent. *Webster*, 128 S.W.3d at 229; *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). Lack of clarity, however, does not necessarily create an ambiguity, and neither does a mere disagreement between the parties. *See Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003) (adding that whether "a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered"); *see also City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 722 (Tex. App.—Fort Worth 2008, pet. filed) (explaining that when "the meaning of a contract is unambiguous, a party's construction is immaterial").

When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). Conversely, the interpretation of an unambiguous contract is a matter of law to be determined by the trial court. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000).

Section four of the REA provides that ". . . the Univest Property may either contain the four (4) separate pad sites substantially as shown on the Site Plan or contain three (3) pad sites so long as all three (3) buildings are separated by at least one hundred feet (100')."  Section three of the REA provides that "[t]he Shopping Center shall be used for retail and/or restaurant purposes . . . and the Univest Property, respectively, shall be entitled to no more than two (2) financial institutions."  Thus, the REA allows Univest to create three pad sites and designate its pad sites for retail use.

Neither the Agreement nor the REA, however, defines the term "pad site."  Vineyard, therefore, suggests that the term is ambiguous and argues that "[w]hether Univest had the right to alter the layout depicted in the Site Plan turned on whether it sought to build a 'pad site,' which is a real estate term of art denoting a specific size."[3]  In support of its argument, Vineyard cites to the deposition testimony of Collins, in which Collins provides his interpretation of the term "pad site."[4]  Such parol evidence, however, is not admissible for the

---

[3] ... The dictionary in defining the commonly used term "pad site," however, does not mention size, but instead defines "pad site" as "a building lot available for retail development, as next to a shopping mall or center." Dictionary.com, "pad site," http://dictionary.reference.com/browse/pad+site (last visited Sept. 30, 2009).

[4] ... Collins testified that "pad site" is a term of art in the real estate development industry that refers to a restaurant or a retail building that is

11

purpose of creating an ambiguity. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (stating that an unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imparts).

The Site Plan attached to the REA depicts the overall layout of both Vineyard's and Univest's properties. The portion of the Site Plan pertaining to Univest's property shows four "pad sites" that are each approximately 5,000 square feet. Section four of the REA allows Univest to alter the Site Plan by creating three "pad sites." The Site Plan does not, however, depict how those three "pad sites" should look in size or shape. Furthermore, neither the Agreement nor the REA state restrictions as to the size or shape of the "pad sites."

The Agreement and the REA do, however, expressly state restrictions as to spacing, parking, dumpsters, and height. If it had been Vineyard's intent, therefore, to restrict the size and shape of Univest's "pad sites," then Vineyard

---

anywhere from 2,500 square feet up to 9,000 square feet. The Site Plan, however, depicts two of Vineyard's own "pad sites" along Highway 121 which contain retail buildings that are over 9,000 square feet. Furthermore, Collins testified at one point that it was not the size of the building Vineyard objected to but its width and that Univest could have a 16,000 square foot building so long as the building was laid out a certain way.

could have expressly included such a provision in the Agreement or the REA as it did for spacing, parking, dumpsters, and height. However, it did not do so. The only restrictions expressly provided pertaining to "pad sites" state that "pad sites" must be at least one hundred feet apart and "may be laid out differently so long as each pad site contains sufficient parking for it[s] use."

Thus, based on the plain language of the agreement, the REA allowed Univest to create three pad sites, use its property for retail, and alter the layout and size of its pad sites from the original Site Plan; therefore, Univest's planned structure is in compliance with the REA. If we were to interpret the agreement as Vineyard asks us to, and require Univest to seek Vineyard's consent for its planned structure, then we would be rendering express provisions in sections three and four of the REA meaningless—specifically, Univest's right to create three pad sites, alter the layout of the original Site Plan, and use its space for retail. In order to prevent rendering portions of the REA meaningless, the only reasonable interpretation for the consent provision is that the parties intended for consent to be sought when a party *revises* express provisions in the REA and not when a party is in *compliance* with the REA. *See Coker*, 650 S.W.2d at 393. We conclude, therefore, that Univest's planned structure is in compliance with the REA as a matter of law and that the trial court did not err

13

in granting Univest's partial motion for summary judgment. Accordingly, we overrule Vineyard's first issue.

## IV. Extrinsic Evidence

In its second issue, Vineyard argues that the trial court erred by sustaining Univest's general objection to the purported parol evidence testimony of Collins and by excluding portions of Collins's affidavit because Collins's testimony met the admissibility requirements under the rules of evidence and common law. However, because we have concluded that the terms in the REA are not ambiguous, we must overrule Vineyard's evidentiary issues. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (recognizing that if the agreement is not ambiguous, courts do not consider extrinsic evidence when interpreting the agreement). Accordingly, we overrule Vineyard's second issue.

## V. Attorneys' Fees

In its third and final issue, Vineyard claims that the trial court erred by awarding attorneys' fees to Univest and Yorkshire.[5]

A. Standard of Review

---

[5] ... Both Univest and Yorkshire filed a motion for attorneys' fees under the REA, which expressly provided for attorneys' fees, and under the Declaratory Judgment Act.

14

When a statute states that a trial court "may" award attorney's fees, such an award is reviewable for an abuse of discretion. *Smith v. McCarthy*, 195 S.W.3d 301, 304 (Tex. App.—Fort Worth 2006, pet. denied); *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). An award of reasonable attorney's fees is mandatory under section 38.001 of the civil practice and remedies code if there is proof of the reasonableness of the fees, but the *amount* of the award lies within the trial court's discretion. *Ulico Cas. Co. v. Allied Pilots Assoc.*, 187 S.W.3d 91, 109–10 (Tex. App.—Fort Worth 2005, no pet.) ("A trial court has discretion in fixing the amount of attorney's fees, but it has no discretion to entirely deny attorney's fees established under section 38.001."), *rev'd on other grounds*, 262 S.W.3d 773 (Tex. 2008).

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). We cannot conclude that a trial court abused its discretion merely because we would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

15

B.  Discussion

Vineyard claims that because the trial court did not find that an award of attorneys' fees to Univest and Yorkshire was "equitable and just," then any such award predicated on the Declaratory Judgment Act ("DJA") is improper. We disagree.

When an abuse-of-discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law are not required unless a statute or rule specifically states otherwise.  *See In re M.J.G.*, 248 S.W.3d 753, 761 (Tex. App.—Fort Worth 2008, no pet.); *Davis v. Spring Branch Med. Ctr., Inc.*, 171 S.W.3d 400, 413 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Therefore, because we review the award for attorneys' fees under the DJA for an abuse of discretion, and because the DJA is silent on findings of fact and conclusions of law, we hold that the trial court was not required to issue express findings and conclusions in relation to the award of attorneys' fees to Univest and Yorkshire.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *see also Benchmark Ins. Co. v. Sullivan*, No. 12-07-00223-CV, 2009 WL 1153385, at *4 (Tex. App.—Tyler Apr. 30, 2009,  no pet.) (mem. op.) (implying that express findings of fact and conclusions of law are unnecessary when a trial court awards attorneys' fees under the Texas Labor Code).  Furthermore, where, as here, no findings of fact and conclusions of law are requested or

16

filed, we imply all necessary findings and conclusions to support the trial court's judgment. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). Thus, we presume that the trial court impliedly found that an award of attorneys' fees to Univest and Yorkshire was "equitable and just."[6]

Vineyard, however, also claims that the trial court improperly awarded contractual attorney's fees under the REA to Yorkshire, a non-party to the agreement. Yorkshire, on the other hand, points out that it filed a claim for attorney's fees under the REA and under the DJA; therefore, the trial court's award of attorney's fees could be supported by its claim pursuant to the DJA. We agree. Because we presume the trial court awarded attorney's fees to Yorkshire based on its claim for declaratory relief, we need not address Vineyard's argument pertaining to attorney's fees under the REA. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (stating that a judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence); *see also Fortenberry v. Cavanaugh,* No. 03-07-00310-CV, 2008 WL

---

[6] ... We note that in its reply brief, Vineyard presents an alternative argument on why the trial court had to make a finding as to the attorneys' fees being "equitable and just." Specifically, Vineyard references a rule 11 agreement in which the parties agreed that the trial court had to make factual findings to rule on the motion for attorneys' fees. Vineyard, however, cites no authority to support its argument. Therefore, the argument is inadequately briefed and presents nothing for our review. *See* Tex. R. App. P. 38.8(h).

4997568, at *10 (Tex. App.—Austin Nov. 26, 2008, pet. denied) (mem. op.) (presuming that the trial court awarded appellee attorney's fees based on appellee's claim for declaratory relief, and declining to address any additional grounds for attorney's fees). Accordingly, we overrule Vineyard's third issue.

## VI. Conclusion

Having overruled all three of Vineyard's issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: CAYCE, C.J.; MCCOY and MEIER, JJ.

DELIVERED: October 1, 2009