02-09-400-CV















 

 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-400-CV

 

 

KEVIN
 CLARK                                                                                    APPELLANT

 

V.

 

COTTEN
 SCHMIDT, L.L.P. F/K/A                                                         
 
 APPELLEE                                                                                                                                                         

KIRKLEY
SCHMIDT & COTTEN, L.L.P.

 

------------

 

FROM THE 48TH
DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

OPINION

 

------------

          In two issues, appellant Kevin Clark
appeals the trial court’s decision to deny his motion for summary judgment and
grant the motion for summary judgment of appellee Cotten Schmidt, L.L.P. f/k/a Kirkley
Schmidt & Cotten, L.L.P. (Cotten Schmidt). 
We affirm in part and reverse and remand in part.

Background Facts

          This appeal concerns the amount of
money that Clark was entitled to receive as a repayment of his capital
investment under Cotten Schmidt’s partnership agreement upon his leaving the
law firm.  Clark joined the firm in the
fall of 2001 as a non-equity partner.  In
2003, Clark became an equity partner, and he contributed $25,000 to the firm as
capital.

          The partnership agreement contains the
following relevant provisions:

          1.04.  Classes
of Partners.  There shall be four (4)
classes of partners.

 

          a.       “Equity Partners” are those partners who
(i) have contributed to the capital of the partnership, (ii) own an
interest in the capital and in the profits and losses of the partnership, (iii)
have a vote in partnership matters, and (iv) participate in the distribution of
partnership profits as defined in Article VIII.

 

          . . . .

 

          3.02.  Assets.  The assets of the partnership are:

          

          a.       Cash balances in partnership accounts
other than any trust accounts maintained by the partnership;

 

          b.       The physical assets and personal property
as reflected on the partnership’s books, records, and financial statements;

 

          c.       The notes and accounts receivable of the
partnership; and

 

          d.       Work in process and contingent-fee
interests.

 

          . . . .

 

          5.01.  Books. 
The partnership shall maintain books and records to reflect all business
and financial transactions using the cash basis of accounting unless otherwise
agreed.

 

          . . . .

 

          6.01.  Equity Partners.  All Equity Partners . . . shall have an equal
ownership interest in the assets of the partnership . . . .

 

          . . . .


 

          6.04.  Capital Contributions By New Equity
Partners.  All Equity Partners to be admitted
to the partnership shall be required to make a capital contribution to the
partnership as determined by the partnership. 
The amount of capital contribution credited to the capital account of
the new Equity Partner shall be designated by the partnership with the prior
concurrence of the new Equity Partner.

 

          . . . .

 

          6.07.  Capital Accounts on Termination.  . . . 
[A]n Equity Partner’s interest in the partnership on termination of the
partnership shall not be determined by his or her capital account.  All Equity Partners shall have an equal
interest in the value of partnership assets . . . .

 

          . . . .

 

          12.03. Withdrawal
of Equity (including Senior) Partner. 
An Equity Partner who withdraws from the partnership, and who is
not then in substantial breach of his or her duties to the partnership, shall
be entitled to the following:

 

          a.       To payment . . . of his or her percentage
of fees collected for noncontingent work performed by the partnership prior to
the effective date of withdrawal and collected by the partnership within
twenty-four (24) months after the effective date of withdrawal;

 

          b.       To payment . . . of his or her percentage
of fees collected for work performed by the partnership prior to the effective
date of withdrawal on contingent-fee or bonus-fee cases, regardless of how long
after the date of withdrawal those fees are collected by the partnership. . . .;[[1]]
and

 

          c.       To repayment of his or her capital
investment in the partnership calculated as an equal interest in the
depreciated book value of all partnership assets less an equal proportion of
the partnership long term and capital debt. 
If negative, this liability will offset amounts under subsections (a) or
(b).[[2]]  [Emphasis added.]

 

          Clark voluntarily left the firm in May
2005, at which time it had eleven equity partners.  After consulting with accountants, the firm paid
$4,640.36 to Clark as his capital investment repayment under section 12.03(c)
of the partnership agreement; the firm said that this amount reflected
“one-eleventh of the Total Partners’ Equity reflected on the May 31, 2005
balance sheet.”  Clark contended
that the firm incorrectly valued his capital investment repayment.  He relied on an opinion from an accountant who
reviewed the partnership agreement and concluded that the firm wrongly excluded
the following items from the definition of “partnership assets” under section
12.03(c):  notes, accounts receivable,
work in process, and contingent fee interests.

          Clark filed a lawsuit against Cotten
Schmidt, asserting that it breached section 12.03(c) of the partnership
agreement by incorrectly calculating and paying him the $4,640.36 and also
breached a fiduciary duty to him.  Cotten
Schmidt answered Clark’s allegations and filed a motion for summary judgment in
which it argued that quasi-estoppel precludes Clark’s breach of contract claim
and that, as a matter of law, the firm did not owe a fiduciary duty to him.[3]

          Clark filed a motion for summary
judgment on his breach of contract claim; he asserted that notes, accounts
receivable, work in process, and contingent fee interests are unambiguously included
under section 12.03(c)’s capital-investment-repayment calculation, which uses
the phrase “all partnership assets,” because those items are included in
section 3.02’s definition of “assets.” Cotten Schmidt contended, “When the
language of section 12.03(c), and Mr. Clark’s current interpretation, are
considered in context . . ., it becomes apparent that the firm’s interpretation
. . .
is correct, and that Mr. Clark’s current interpretation is wrong.”

          The trial court denied Clark’s summary
judgment motion and granted Cotten Schmidt’s motion against Clark’s contractual
claim based on its quasi-estoppel defense, concluding that Cotten Schmidt
established all elements of the defense as a matter of law.[4]  Clark filed notice of this appeal.

Summary Judgment Standards

          In a summary judgment case, the issue
on appeal is whether the movant met the summary judgment burden by establishing
that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein
& Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex.
2009).  We review a summary judgment de
novo.  Mann Frankfort, 289 S.W.3d at 848. 
We consider the evidence presented in the light most favorable to the
nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors
could and disregarding evidence contrary to the nonmovant unless reasonable
jurors could not.  Id.  We indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).

          A plaintiff is entitled to summary
judgment on a cause of action if it conclusively proves all essential elements
of the claim.  See Tex. R. Civ. P. 166a(a), (c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  A defendant is entitled to summary judgment on
an affirmative defense if the defendant conclusively proves all the elements of
the affirmative defense.  Chau v. Riddle, 254 S.W.3d 453, 455
(Tex. 2008); see Tex. R. Civ. P.
166a(b), (c).  When both parties move for
summary judgment and the trial court grants one motion and denies the other,
the reviewing court should review both parties’ summary judgment evidence and
determine all questions presented.  Mann Frankfort, 289 S.W.3d at 848.

Quasi-Estoppel

          In his second issue, Clark argues that
the trial court erred by granting Cotten Schmidt’s motion for summary
judgment.  Cotten Schmidt’s sole argument
in its motion was that Clark’s breach of contract claim is barred by
quasi-estoppel; Cotten Schmidt did not seek summary judgment on the correctness
of its interpretation of the partnership agreement.

The law on quasi-estoppel

          Quasi-estoppel is an affirmative
defense that “precludes a party from asserting, to another’s disadvantage, a
right inconsistent with a position previously taken.  The doctrine applies when it would be
unconscionable to allow a person to maintain a position inconsistent with one
to which he acquiesced, or from which he accepted a benefit.”  Lopez
v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000)
(citation omitted); see Brooks v. Brooks, 257 S.W.3d 418, 423
(Tex. App.—Fort Worth 2008, pet. denied) (explaining that “unlike equitable
estoppel, quasi-estoppel requires no showing of misrepresentation or
detrimental reliance”).  “Thus, quasi
estoppel forbids a party from accepting the benefits of a transaction . . . and
then subsequently taking an inconsistent position to avoid corresponding
obligations or effects.”  Atkinson Gas Co. v. Albrecht, 878 S.W.2d
236, 240 (Tex. App.—Corpus Christi 1994, writ denied).

          For example, in Cimarron County Property Owners Association v. Keen, the Beaumont
Court of Appeals held that quasi-estoppel precluded the owners association from
contending in a lawsuit that a deed restriction prohibited a daycare when the
association previously opined that the daycare could operate.  117 S.W.3d 509, 512–14 (Tex. App.—Beaumont
2003, no pet.).  Similarly, in Eckland Consultants, Inc. v. Ryder, Stilwell
Inc., the Houston (First District) Court of Appeals held that
quasi-estoppel prevented a property inspection company from claiming that a
plaintiff did not have standing to sue for a breach of the inspection contract
when the inspection company accepted the benefits of the contract and stated in
a report that noncontracting entities could rely on the report.  176 S.W.3d 80, 81–83, 87–88 (Tex. App.—Houston
[1st Dist.] 2004, no pet.).        
However, there “can be no ratification or estoppel from acceptance of the
benefits by a person who did not have knowledge of all material facts.”  Frazier
v. Wynn, 472 S.W.2d 750, 753 (Tex. 1971); Sun Operating Ltd. P’ship v. Holt, 984 S.W.2d 277, 292 (Tex. App.—Amarillo
1998, pet. denied) (op. on reh’g).

Analysis

          In 2003, when Clark was an equity
partner with Cotten Schmidt, J. Lyndell Kirkley left the firm.  Like Clark’s later dispute, Kirkley contested
the amount of his capital investment repayment under section 12.03(c) of the
partnership agreement, claiming that work in process, accounts receivable, and
contingent fee interests were payable assets of the partnership under that
section.[5] According
to Cotten Schmidt, Clark and Dennis M. Conrad served on a committee formed to
communicate with Kirkley about his claim. 
Conrad stated in an affidavit, “Mr. Clark agreed with the firm’s
position that the method of calculation of Mr. Kirkley’s payment was correct
under the firm’s partnership agreement, and Mr. Clark signed letters on behalf
of the firm to Mr. Kirkley communicating the firm’s position.”

          Specifically, on September 19, 2003,
Clark signed a letter to Kirkley stating, “We believe that the . . . check
tendered to you is the correct amount owed to you under the . . . partnership
agreement.”  On November 4, 2003, Clark
signed another letter to Kirkley that detailed the firm’s reasons that it
disagreed with Kirkley’s position.  The
November 4, 2003 letter described Kirkley’s claim as “simply wrong.”  In its last paragraph, the letter stated,

We have differing views of what the Partnership
Agreement provides a withdrawing partner is entitled to . . . .  In any event, we are willing to sit down with
you in a spirit of compromise and engage in a professional discussion of the
outstanding differences between us in an attempt to resolve them amicably. . .
.  Please call me if you are interested
in having such a discussion.

 

          Days later, Clark signed another
letter that was addressed to Kirkley and that expressed disagreement with
Kirkley’s position.[6]
 After the firm sent Clark’s last letter
to Kirkley, Kirkley did not pursue any claim against the firm related to the
repayment of his capital investment.

          In his response to Cotten Schmidt’s
summary judgment motion, Clark said that during the Kirkley dispute, he was
“simply acting as a point person” and was not a real participant.  His affidavit contained the following facts
supporting that position:

·       
three
other attorneys in the firm “took the lead in attempting to resolve the
dispute” with Kirkley, but those attorneys eventually stopped communicating
with Kirkley, and Clark agreed to relay Cotten Schmidt’s position to him;

 

·       
the
letters that Clark signed were prepared by other partners in the firm;[7]

 

·       
Clark
“did not participate in formulating Cotten Schmidt’s position against Mr.
Kirkley,” nor did he “conduct any inquiry as to whether the position was
correct” or even “provide any input as to Cotten Schmidt’s position or the
correctness thereof”; instead, his role “was simply to communicate Cotten
Schmidt’s position to Mr. Kirkley and receive his responses”; and

 

·       
in
his communication with Kirkley, Clark was not “representing [his] own
interest[,] and [he] took no position as to [his] view individually as to the
interpretation of the Partnership Agreement.”

 

          Clark contends that his affidavit
creates fact issues that preclude summary judgment for Cotten Schmidt.  We agree. 
While Cotten Schmidt provided evidence (through Conrad’s affidavit) that
Clark served on a committee during the Kirkley dispute and “agreed with the
firm’s position that the method of calculation of Mr. Kirkley’s payment was
correct,” Clark countered that evidence by averring that he did not participate
in forming the firm’s position and took no position as to the interpretation of
the agreement.  Clark’s affidavit, viewed
in the light most favorable to him (as the nonmovant), indicates that he served
as a conduit of Cotten Schmidt’s position to Kirkley rather than as a creator or
endorser of that position and that he therefore did not have knowledge of all
material facts about the position.  See Frazier,
472 S.W.2d at 753.

          Cotten Schmidt alleges that Clark’s
assertion that he acted as a conduit for the other equity partners is false
because Clark had the privilege and legal responsibility to vote on the Kirkley
matter.  But the evidence does not
conclusively establish that Clark actually voted on the matter or was asked for
his opinion about it.  While Conrad’s
affidavit indicates that the dispute was handled by a committee with input and
approval from “other” (although not explicitly “all”) partners, Clark’s
affidavit states only that three partners “took the lead” in attempting to
resolve the dispute with Kirkley and explains that he was never “asked to provide
input” on the matter.

          For these reasons, resolving all
doubts in Clark’s favor on the quasi-estoppel issue, we hold that Cotten
Schmidt did not conclusively establish that it is unconscionable to allow him
to maintain a position inconsistent with one to which he previously acquiesced
on behalf of Cotten Schmidt even if Clark, as an equity partner, received a
benefit in 2003 by Cotten Schmidt’s retaining money that it might have
otherwise paid to Kirkley.  See Lopez,
22 S.W.3d at 864.  Therefore, we sustain
Clark’s second issue, and we reverse the portion of the trial court’s order
that grants summary judgment for Cotten Schmidt against Clark’s breach of
contract claim based on Cotten Schmidt’s quasi-estoppel defense.  See
Haire v. Nathan Watson Co., 221 S.W.3d 293, 301 (Tex. App.—Fort Worth 2007,
no pet.) (explaining that when “reviewing a summary judgment granted on
specific grounds, the summary judgment can only be affirmed if the ground on
which the trial court granted relief is meritorious); GuideOne Ins. Co. v. Cupps, 207 S.W.3d 900, 903 (Tex. App.—Fort
Worth 2006, pet. denied) (same).

Interpretation of the Partnership
Agreement

          In his first issue, Clark contends
that the trial court erred by denying his motion for summary judgment on his
breach of contract claim because, as a matter of law, Cotten Schmidt misinterpreted
section 12.03(c) of the partnership agreement and therefore undervalued his
capital investment repayment. Cotten Schmidt asserts that its
interpretation of section 12.03(c) is correct “when all of the words . . . are
properly construed in conjunction with the remainder of . . . the
Partnership Agreement.”

The principles of interpreting contracts

          “The law applicable to construction of
contracts has been applied to partnership agreements.”  In re
Waggoner Estate, 163 S.W.3d 161, 165 (Tex. App.—Amarillo 2005, no pet.).  “We construe contracts ‘from a utilitarian
standpoint bearing in mind the particular business activity sought to be
served’ and ‘will avoid when possible and proper a construction which is
unreasonable, inequitable, and oppressive.’”  Frost
Nat’l Bank v. L & F Dist., Ltd., 165 S.W.3d 310, 312 (Tex. 2005)
(quoting Reilly v. Rangers Mgmt., Inc.,
727 S.W.2d 527, 530 (Tex. 1987)).

          When construing contracts, our primary
concern is to ascertain the true intent of the parties as expressed in the
contract.  NP Anderson Cotton Exch., L.P. v. Potter, 230 S.W.3d 457, 463 (Tex.
App.—Fort Worth 2007, no pet.).  We must
examine and consider the entire contract in an effort to harmonize and give
effect to all provisions so that none are rendered meaningless.  Id.;
see J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 229 (Tex. 2003).  “We
presume that the parties to the contract intend every clause to have some
effect.  We give terms their plain,
ordinary, and generally accepted meaning unless the contract shows that the parties
used them in a technical or different sense.” 
FWT, Inc. v. Haskin Wallace Mason
Prop. Mgmt., L.L.P., 301 S.W.3d 787, 794 (Tex. App.—Fort Worth 2009, pet.
denied) (op. on reh’g) (citations omitted). 
A specific contractual provision controls over a general provision.  City of
The Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 722 (Tex. App.—Fort
Worth 2008, pet. dism’d).

          Lack of clarity or a disagreement
among the parties does not necessarily create an ambiguity.  Universal
Health Servs., Inc. v. Renaissance Women’s Group, P.A., 121 S.W.3d 742, 746
(Tex. 2003).  Rather, whether “a contract
is ambiguous is a question of law that must be decided by examining the
contract as a whole in light of the circumstances present when the contract was
entered.” Id.  “If, after the pertinent rules of construction
are applied, the contract can be given a definite or certain legal meaning, it
is unambiguous and we construe it as a matter of law.”  Frost
Nat’l Bank, 165 S.W.3d at 312.  But
if a contract is ambiguous, then interpretation of the contract presents a fact
issue for the jury.  Transcon. Gas Pipeline Corp. v. Texaco, Inc., 35 S.W.3d 658, 665
(Tex. App.—Houston [1st Dist.] 2000, pet. denied).  “When the [contract] is not ambiguous on its
face, extrinsic evidence may not be used to create an ambiguity.”  Balandran
v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 745 (Tex. 1998); see CenterPoint Energy Houston Elec., L.L.P.
v. Old TJC Co., 177 S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2005,
pet. denied).

Analysis

          The parties dispute the meaning of
section 12.03(c) of the partnership agreement, which states that a withdrawing
equity partner is entitled to “repayment of his or her capital investment in
the partnership calculated as an equal interest in the depreciated book value
of all partnership assets less an equal proportion of the partnership long term
and capital debt.”  Specifically, Clark
contends that “all partnership assets” in section 12.03(c) unambiguously includes
notes, accounts receivable, work in process, and contingent fee interests
because those items are included in section 3.02’s definition of assets. Cotten
Schmidt argues that section 12.03(c)’s “all partnership assets” phrase does not
include those items for the following reasons:

·       
section
12.03(c) should not be interpreted to allow a withdrawing partner to obtain a
share of accounts receivable and work in process for work performed by the
partnership because sections 12.03(a) and (b) already give the partner a
percentage of those items that are collected after the partner leaves (thus,
12.03(c), if interpreted in the way that Clark asserts, would allow for double
recovery);

 

·       
section
5.01 of the partnership agreement says that the partnership uses the cash basis
of accounting, which does not recognize accounts receivable, work in process,
and contingent fee interests;[8]

 

·       
because
section 12.03(c) uses the words “capital” and “depreciated book value”, it
refers only to capital assets that are “funded with capital investment or long term/capitalized
debt”; it does not therefore refer to accounts receivable, work in process, and
contingent fee interests, and the specific limiting language in section
12.03(c) controls over the general language in section 3.02;

 

·       
if
“the capital investment repayment calculation were to include accounts
receivable, but Cotten Schmidt never collected certain accounts, then the
interest of the withdrawn Equity Partner would be elevated over the interests
of the firm and the remaining Equity Partners, in violation of the . . . principles
underlying the Partnership Agreement”; and

 

·       
under
Clark’s argument, shortly after making his $25,000 capital contribution in
2003, he would have been able to resign and be paid a substantially greater
sum; thus, Clark’s construction of the agreement creates an incentive for
equity partners to leave the firm.

 

          For the following reasons, Cotten
Schmidt has shown that section 12.03(c) could reasonably be interpreted to
exclude notes, accounts receivable, work in process, and contingent fee
interests; thus, Clark’s interpretation of the agreement is not conclusively
correct.  First, the phrase “depreciated
book value” precedes “all partnership assets” in section 12.03(c), and the
items described in section 3.02(c) and (d) of the agreement are not depreciable.[9]  Second, the phrase “equal interest in the
depreciated book value of all partnership assets” in section 12.03(c) is
followed by “less an equal proportion of the partnership long term and capital
debt,” which may indicate that all of section 12.03(c) refers to capital assets
and excludes noncapital assets.[10]  Third, sections 12.03(a) and (b) limit a
withdrawing equity partner to receiving a portion of noncontingent and contingent
fees when the firm actually collects those fees after the partner withdraws,
while Clark’s interpretation of section 12.03(c) may entitle him to a portion
of those fees regardless of whether they are ever collected or earned and may therefore
render meaningless the limitations of sections 12.03(a) and (b).  See Potter,
230 S.W.3d at 463.  Finally, Clark’s
interpretation of section 12.03(c) might allow him to be paid for his share of an
account receivable upon withdrawal under section 12.03(c) and then be paid again
when a fee from the account is collected under sections 12.03(a) or (b); this
double recovery could be considered unreasonable or inequitable.  See
Frost Nat’l Bank, 165 S.W.3d at 312.

          Therefore, resolving all doubts in
Cotten Schmidt’s (the nonmovant’s) favor, we hold that Clark’s interpretation
of section 12.03(c) is not conclusively correct and that the trial court did
not err by denying his motion for summary judgment.  See
Parker, 249 S.W.3d at 399; MMP, Ltd., 710 S.W.2d at 60.  We overrule Clark’s first issue.[11]

Conclusion

          Having overruled Clark’s first issue
and having sustained his second issue, we affirm the trial court’s judgment to
the extent that it (1) grants Cotten Schmidt’s motion for summary judgment on
Clark’s breach of fiduciary duty claim (because he did not make a challenge
regarding that claim in this court) and (2) denies Clark’s motion for
summary judgment.  But we reverse the judgment
to the extent that it renders a take nothing judgment on Clark’s breach of
contract claim, and we remand this case to the trial court for further
proceedings related to that claim.

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MCCOY, J.; and DIXON W. HOLMAN
(Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  October 7, 2010











[1]Clark
does not claim that he has not received proper payments under sections 12.03(a)
and (b) of the agreement.  Randall
Schmidt, a partner at Cotten Schmidt, stated in an affidavit,

As the firm collected fees after the date of Mr.
Clark’s withdrawal on accounts receivable and work-in-process for work
performed by the firm before the date of his withdrawal, the firm’s
administrator applied the applicable compensation formula to those fee
collections . . . and issued checks to Mr. Clark . . . .

 





[2]The
partnership agreement also references a Partner Compensation Addendum.  The addendum specifies how hourly,
contingent, and bonus fees are distributed to individuals within the firm; it states,
among other provisions, that “a portion of all fees earned be shared among the
partners in recognition of the partnership effort required to maintain the firm.”





[3]Clark
described his contractual claims in his petition as “Breach of Contract,”
“Neglecting to perform contractual duty,” and “Refusing to perform contractual
obligations.”  Our reference to Clark’s
breach of contract cause of action includes each of these claims.  We will detail the facts relevant to Cotten
Schmidt’s quasi-estoppel defense in our discussion of Clark’s second issue.





[4]The court also
concluded that the firm did not have a fiduciary duty to Clark.  Clark does not challenge the trial
court’s decision to grant summary judgment against his breach of fiduciary duty
claim; therefore, we affirm the trial court’s judgment to the extent that it
resolves that claim against Clark.  See Jacobs v. Satterwhite, 65
S.W.3d 653, 655–56 (Tex. 2001); Smith v.
Tilton, 3 S.W.3d 77, 84 (Tex. App.—Dallas 1999, no pet.).





[5]In
a letter that Kirkley wrote to Randall Schmidt in September 2003, Kirkley said,
“I am amazed that your attempted repayment to me under paragraph 12.03(c)
disregards the plain language of the Agreement adopted by all partners.”





[6]In its motion for
summary judgment, Cotten Schmidt said that appellant’s letters to Kirkley were
sent “on behalf of the firm.”





[7]Cotten
Schmidt does not dispute that a committee drafted the letters and that Clark
signed them.





[8]Cotten
Schmidt submitted the affidavit of David J. Quick, a certified public accountant,
which affirmed that the cash basis of accounting “does not recognize accounts
receivable, work-in-process, and contingent fee interests” and opined that the
cash basis of accounting is a “foundational reference point that should be used
for all other . . . terms in the partnership agreement.”  Clark’s accountant believed that the
“cash basis of accounting has nothing to do with valuing a partnership interest”
because the “valuation method [was] described in the partnership agreement.”





[9]Clark
has not disputed Cotten Schmidt’s claim that notes, contingent fee interests,
accounts receivable, and work in process are not depreciable.





[10]Words
in a contract may “not be plucked from their context and then construed.”  King’s
Court Racquetball v. Dawkins, 62 S.W.3d 229, 233 (Tex. App.—Amarillo 2001,
no pet.).





[11]Because
we hold that Cotten Schmidt’s interpretation of the agreement is reasonable,
which precludes summary judgment in Clark’s favor, causes us to overrule his
first issue, and requires us to remand this case to the trial court, we will
not address whether Clark’s interpretation of the agreement is also
reasonable.  In other words, we will not
address whether Cotten Schmidt’s interpretation of the agreement is
conclusively correct, or alternatively, whether the agreement is ambiguous,
because Cotten Schmidt did not move for summary judgment based on its
interpretation.  See Gibson v. Park Cities Ford, Ltd., 174 S.W.3d 930, 931 (Tex.
App.—Dallas 2005, no pet.) (“Because we conclude Park Cities Ford did not
conclusively establish its entitlement to summary judgment, we reverse the
trial court’s judgment and remand this case to the trial court for further
proceedings.”); see also S. Austin Mkt. Place, Inc. v. James F.
Parker Interests, Inc., No. 03-99-00144-CV, 2000 WL 374064, at *4 (Tex.
App.—Austin Apr. 13, 2000, no pet.) (not designated for publication) (“Without
deciding whether an ambiguity exists in the contract, we hold that South Austin
has not conclusively proven that its interpretation of the agreement is the
only reasonable interpretation”).